IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JEHAN SEMPER, | ) | CIVIL NO. 24-00211 HG-WRP |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO (1) |
| vs. | ) | GRANT PLAINTIFF'S |
| | ) | APPLICATION TO PROCEED |
| HAWAII LIFE REAL ESTATE | ) | WITHOUT PREPAYMENT OF FEES |
| SERVICES, LLC, DBA HAWAII | ) | AND (2) DISMISS THE |
| LIFE REAL ESTATE | ) | COMPLAINT WITH LEAVE TO |
| BROKERS; JOHN REEDER; | ) | AMEND |
| JEANNA RIMMER; ROY | ) | |
| VANDOORN; SAVIO REALTY | ) | |
| LTD; ALLAN B. KROLL; | ) | |
| JEANMARIE R. THEINE; | ) | |
| MACARTHUR & COMPANY | ) | |
| INC, DBA VENTURE | ) | |
| SOTHEBY'S INTERNATIONAL | ) | |
| REALTY; KAREN | ) | |
| SCHNEIDER; HANNAH KEA | ) | |
| TRAINER; GEORGIA | ) | |
| CALLAWAY; HANK CORREA | ) | |
| REALTY, LLC; JOHN T. | ) | |
| CORREA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

FINDINGS AND RECOMMENDATION TO (1) GRANT PLAINTIFF'S
APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES
AND (2) DISMISS THE COMPLAINT WITH LEAVE TO AMEND

Before the Court is Plaintiff Jehan Semper's second Application to Proceed in District Court Without Prepaying Fees or Costs (Application), filed on June 13, 2024. See Pl.'s App., ECF No. 31. After careful consideration of the

Application, the record in this action, and the relevant legal authority, the Court FINDS AND RECOMMENDS that the district court GRANT Plaintiff's Application and DISMISS the Complaint with leave to amend.[1]

## I. The Court RECOMMENDS that the District Court GRANT Plaintiff's Application.

Courts may authorize the commencement of any suit without prepayment of fees by a person who submits an affidavit that the person is unable to pay such fees, often referred to as an in forma pauperis or IFP application. See 28 U.S.C. § 1915(a)(1). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." Escobedo v. Applebees, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)). Although Section 1915(a) does not require that a litigant demonstrate absolute destitution, see Adkins, 335 U.S. at 339, "a plaintiff seeking IFP status must allege poverty with some particularity, definiteness and certainty." Escobedo, 787 F.3d at 1234 (citation omitted).

Here, Plaintiff's Application states that she does not have any regular

---

[1] Within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court. A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

income and received approximately $600 from the sale of shares in 2024.  See Pl.'s App., ECF No. 31, at 1.  Further, Plaintiff states that she has $300 in savings and has about $700 in monthly expenses.  See id. at 2.  Based on the information provided in Plaintiff's Application, the Court finds that Plaintiff has demonstrated that she is unable to pay court fees at this time and RECOMMENDS that the district court GRANT the Application.  See 28 U.S.C. § 1915.

## II.  The Court RECOMMENDS that the District Court DISMISS Plaintiff's Complaint With Leave to Amend.

The Court must subject each civil action commenced pursuant to Section 1915(a) to mandatory screening and order the dismissal of any claim that it finds frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (stating that Section 1915(e) "not only permits but requires" the court to dismiss a Section 1915(a) complaint that fails to state a claim); Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) (holding that the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners).

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court must set aside the plaintiff's conclusory factual allegations, accept as

true the plaintiff's non-conclusory factual allegations, and determine whether these allegations state a plausible claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim.  See UMG Recordings, Inc. v. Shelter Capital Partners LLC, 718 F.3d 1006, 1014 (9th Cir. 2013).  Because Plaintiff is appearing pro se in this action, the Court must construe the Complaint liberally, in the light most favorable to Plaintiff, and accept all non-conclusory allegations of material fact as true.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (stating that pleadings filed pro se "must be held to less stringent standards than formal pleadings drafted by lawyers").

### A. Plaintiff's Factual Allegations

In addition to her Complaint, Plaintiff also filed two documents titled "Plaintiff's First Affidavit" and "Plaintiff's First Affidavit Supplemental," which include the complaint that Plaintiff filed with the United States Department of Housing and Urban Development (HUD) and contain additional factual allegations related to the incidents in the Complaint.  See Pl.'s First Aff., ECF No. 24 and Pl.'s First Aff. Suppl., ECF No. 32.  For purposes of this initial screening, the Court will consider the factual allegations set forth in all three documents.  However, if Plaintiff chooses to file an amended complaint, Local Rule 10.4 requires that an

amended pleading be complete in and of itself without reference to any prior pleading.  See LR10.4; see also Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent." (citations and internal quotation marks omitted)).  To be clear, any amended complaint must contain all of Plaintiff's factual allegations and legal claims and cannot refer to or incorporate by reference other documents.

        In 2022, Plaintiff made efforts to purchase vacant property on the island of Hawaii.  See Compl., ECF No. 1.  As part of those efforts, Plaintiff contacted several real estate professionals.  See Pl.'s First Aff., ECF No. 24-1, at 2-10.  Plaintiff emailed Defendant Jeanna Rimmer, who advised Plaintiff that her colleague Defendant John Reeder would show Plaintiff several properties.  See id. at 2.  Defendant Rimmer and Defendant Reeder work for Defendant Hawaii Life Real Estate Services, LLC, doing business as Hawaii Life Real Estate Brokers (Hawaii Life).  See id.  Plaintiff also named Roy Vandoorn as a Defendant in her Complaint as the "Responsible Agent" for Defendant Hawaii Life.  See id.  Defendant Reeder showed Plaintiff multiple properties including a property on Kehau Road.  See id. at 3.  While at that property, Defendant Reeder had a conversation with a neighbor during which time Plaintiff overheard the neighbor say, "Put it up as high as you can anywhere in this neighborhood."  Id.  Plaintiff

alleges that Defendant Reeder laughed in response.  See id.  Plaintiff alleges that she asked Defendant Reeder if the neighbor told Defendant Reeder not to sell the land to Plaintiff.  See id. Defendant Reeder said no; however, Plaintiff alleges that she heard the neighbor "say words that [she] understood as instructing [Defendant] Reeder to make certain he did not sell vacant land to me within that vicinity."  Id.  Defendant Reeder then told Plaintiff that he spoke to the neighbor about a "tax sale" on the property and that the practical effect of the tax sale was that the property was not "saleable" based on the agent information that he reviewed.  See id. at 3.  Plaintiff alleges that Defendant Reeder did not adequately explain the matter to her.  See id.

Defendant Reeder also showed Plaintiff a property located on Oahu Street.  See id. at 5-6.  While viewing this property, Plaintiff noticed two vehicles on the property and that trees on the property had been used to build "an indigenous structure" on the land.  See id. at 5.  Plaintiff told Defendant Reeder that she was interested in the land but wanted to know more information about the vehicles and the structure because "as a matter of religious practice" she did not want to displace any indigent or homeless person.  See id.  Plaintiff alleges that Defendant Reeder contacted a neighbor who stated that he had been cutting trees on the property as a "kind gesture," which Plaintiff believed was "preposterous." See id. at 6.  Plaintiff told Defendant Reeder that she would only consider buying

6

the Oahu Street property if there was no additional harm to the land and if the neighbor ceased trespassing, at which time Plaintiff alleges that Defendant Reeder became "wholly belligerent" and shouted at Plaintiff that she did not have a right to say anything about the property before buying it. See id. at 6. Plaintiff then communicated that she wanted additional provisions included in the offer contract, referred to by Plaintiff as "Section Q provisions." See id. at 6-7. These provisions are not set forth in Plaintiff's Complaint or in her HUD complaint but are reflected in an email that was apparently attached as an exhibit to her HUD complaint. See Pl.'s First Aff. Suppl., ECF No. 32, at 22. In that email, Plaintiff stated that she, as Trustee for "Judaism for Humans Home Trust," would like to put an offer on the Oahu Street property. See id. Further, Plaintiff stated that:

> The transaction is contingent upon Buyer receiving bona fide and reliable confirmation that Buyer will be permitted to build desired structure(s) and implement desired methodologies to prevent harm to the environment in a manner consistent with Jewish Kosher standards as construed within Buyer's goals for the property including, but not limited to:
>
> (a) tiny home constructed on flatbed trailer as the main dwelling;
> (b) human waste managed by way of compost toilet;
> (c) above ground garden nourished by way of product of compost toilet;
> (d) waste free grey water management;
> (e) electricity, mobile carrier and internet access at speed and/or consistent capacity necessary to make certain the property is reasonably appropriate for Buyer's goals.

Id. Defendant Reeder replied by email that Plaintiff's Section Q provisions were

"due diligence requirements" that she needed to follow up on herself and were her responsibility.  See id. at 25.  Plaintiff told Defendant Reeder that he must prepare the contract with the Section Q provisions.  See Pl.'s Suppl. Aff., ECF No. 24-1, at 7.  Defendant Reeder refused and resigned as Buyer's agent.  See id.  Plaintiff then reached out to Defendant Rimmer to present the offer on the Oahu Street property, but Defendant Rimmer stated that she would not, and that Plaintiff should communicate with the listing agent.  See id.

        Plaintiff then communicated that she wanted to make an offer on the Oahu Street property to the listing agent, Defendant Kroll, who works for Defendant Savio Realty.  See id.  Defendant Kroll communicated that the seller had accepted another offer.  See id.  Plaintiff then communicated to Defendant Kroll that he needed to make certain that the seller knew that Plaintiff had made an offer on the property.  See id.  Two days later Plaintiff received a text message from another agent at Defendant Savio Realty, Defendant Theine, offering to show her another property and a text message from Defendant Kroll stating again that the seller had accepted another offer on the Oahu Street property.  See id.  Plaintiff did not respond.  See id.

        Plaintiff alleges that she then contacted Defendant Schneider, who worked for Defendant Macarthur & Company INC, doing business as Venture Sotheby's International Realty (Sotheby's).  See id. at 8.  Plaintiff alleges that

8

Defendant Callaway is the "Responsible Agent" for Sotheby's.  See id.  Plaintiff alleges that she told Defendant Schneider that her "goals for the vacant land are religious" and that she was interested in seeing property "from Pahoa to Hilo."  See id.  Defendant Schneider sent Plaintiff information on properties in Kaʻu, outside of Plaintiff's requested area.  See id.  After Plaintiff said that she wanted to see those properties, Defendant Schneider said that she could not show her those properties because they were too far from Pahoa, even though she had previously offed to personally show Plaintiff properties.  See id.  Plaintiff did not communicate with Defendant Schneider again.  See id.

        Plaintiff then reached out to Defendant Trainer, who also worked for Defendant Sotheby's.  See id. at 9.  Plaintiff told Defendant Trainer that she wanted to make an offer on property located on Pikake Lane, that the goals of the property are religious, and that the contract must include Section Q provisions similar to those detailed above.  See id.; see also Pl.'s First Aff. Suppl., ECF No. 32, at 71.  Defendant Trainer prepared a contract but did not include the Section Q provisions and instead included "an ambiguous addendum" designed to deceive Plaintiff.  See Pl.'s First Aff., ECF No. 24-1, at 9.  Plaintiff alleges that Defendant Callaway, who also worked for Defendant Sotheby's, reviewed the contract before it was sent to Plaintiff.  See id. at 9.

        Plaintiff then communicated an offer to buy the Pikake Lane property

9

directly to the listing agent, Defendant Correa, who worked for Defendant Hank Correa Realty, LLC.  See id.  Plaintiff told Defendant Correa that there were certain religious contract provisions that must be included in the contract.  See id. at 10.  Defendant Correa did not respond to Plaintiff.  See id.

### B. Plaintiff's Legal Claims

It is not entirely clear to the Court what specific legal claims Plaintiff is asserting against Defendants in her Complaint.  Plaintiff states that she is seeking declaratory and injunctive relief, but also includes a request for compensatory damages for emotional pain and suffering and punitive damages.  See Compl., ECF No. 1, at 1, 5.  In addition to asserting a claim for "religious discrimination, harassment and retaliation" under the Fair Housing Act (FHA), Plaintiff also references "additional applicable civil rights law [and] breach of duty."  Id. at 1, 3.  Plaintiff also states that Defendants "concerted, colluded and conspired" to discriminate against her.  See id. at 3-5.  Even construing the Complaint liberally, the Court is unable to ascertain whether Plaintiff intends to assert any legal claims against Defendants other than claims under the FHA.  The Court makes no findings regarding the sufficiency of any such additional claims.  To the extent Plaintiff intends to assert any such additional claims in an amended complaint, Plaintiff must explain the factual and legal basis for each Defendant's liability.  See Fed. R. Civ. P. 8(a)(2) (pleadings must contain "a short and plain

10

statement of the claim showing that the pleader is entitled to relief").

Under the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The FHA also includes a specific subsection related to residential real estate transactions. Subsection 3605(a) provides that it is "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). Further, the FHA prohibits retaliation against a person who has engaged in a protected activity. See 42 U.S.C. § 3167.

### 1. Discrimination under the FHA

Discrimination claims under the FHA are analyzed in the same manner as claims under Title VII of the Civil Rights Act, which prohibits employment discrimination. See Gamble v. City of Escondido, 104 F.3d 300, 304 (9th Cir. 1997). A plaintiff may establish an FHA discrimination claim under a theory of disparate treatment or disparate impact. See id., see also Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 711 (9th Cir.

2009). Here, Plaintiff makes a claim of "disparate treatment" under the FHA because she claims that Defendants treated her differently because of her religion. "To prevail on a claim of disparate treatment, a plaintiff must show that she qualified for protection under the FHA, that the defendant engaged in conduct prohibited by the FHA, and that the defendant's prohibited conduct was motived by discriminatory intent." Sanders v. SWS Hilltop, LLC, 309 F. Supp. 3d 877, 881 (D. Or. 2018) (citing Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999)).

First, the allegations in Plaintiff's Complaint are asserted against all Defendants and do not specify what acts each Defendant committed. See Compl., ECF No. 1, at 3-6. Although Plaintiff identified specific acts in her supplemental filings, her Complaint does not contain factual allegations as to each Defendant's conduct. If Plaintiff chooses to file an amended complaint, she must clearly state how each named Defendant discriminated against her. See Hicks v. Makaha Valley Plantation Homeowners Ass'n, No. CIV. NO. 14-00254 HG, 2015 WL 328311, at *5 (D. Haw. Jan. 26, 2015) ("Plaintiffs' Complaint must set forth factual allegations explaining how *each* Defendant allegedly violated the law. Plaintiffs' Complaint is dismissed, without prejudice, based on this ground alone.") (emphasis in original).

Second, Plaintiff has sufficiently alleged that she is qualified for protection under the FHA. However, Plaintiff has not sufficiently alleged that

12

Defendants engaged in conduct prohibited by the FHA or that their conduct was motivated by discriminatory intent. Although Plaintiff states that Defendants "discriminated against Plaintiff because she is Jewish," Pl.'s Compl., ECF No. 1, at 3, Plaintiff must provide more than conclusory allegations of Defendants' intent to discriminate. While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

### 2. Retaliation under the FHA

The FHA forbids retaliation in response to a person having exercised a protected right. See 42 U.S.C. § 3617. To state a claim for retaliation, Plaintiff must plausibly allege "(1) that she was engaged in a protected activity; (2) that she suffered an adverse action in the form of coercion, intimidation, threats, or interference that was causally linked to the protected activity; (3) that she suffered some resulting damage as a result of the adverse action." Lazarus, 2023 WL 6446422, at *4 (citing San Pedro Hotel Co. v. City of L.A., 159 F.3d 470, 477 (9th Cir. 1998)).

First, as with Plaintiff's discrimination claim above, Plaintiff's claim for retaliation similarly does not contain factual allegations as to each Defendant's conduct. See Pl.'s Compl., ECF No. 1, at 3. If Plaintiff chooses to file an amended complaint, she must clearly state how each named Defendant retaliated

13

against her.

Second, Plaintiff alleges that she filed a complaint with HUD, which is a protected activity.  See id.  Plaintiff then alleges that Defendants "exercised their influence to obstruct, delay, prevent conciliation," which "coerce[d] the filing of this federal action."  Id.  Although Plaintiff has alleged that she was engaged in a protected activity, she has not sufficiently alleged that she suffered an adverse action that was causally linked to that protected activity or that she has been harmed by any adverse action by Defendants in retaliation for her HUD filing.  Plaintiff's Complaint does not contain any factual allegations regarding actions that Defendants took after Plaintiff filed her HUD complaint that could plausibly allege retaliation.

The Court concludes that Plaintiff's Complaint fails to state claims upon which relief may be granted.  See 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez, 203 F.3d at 1127.

## CONCLUSION

The Court FINDS and RECOMMENDS that the district court GRANT Plaintiff's second Application to Proceed in District Court Without Prepaying Fees or Costs, DISMISS Plaintiff's Complaint with leave to file an amended complaint **45 days** from the date the district court acts on this Findings and Recommendation, REFER the screening of any amended complaint to the

undersigned, and CAUTION Plaintiff that failure to file an amended complaint within the time frame specified above will result in the automatic dismissal of this action.

        IT IS SO FOUND AND RECOMMENDED.

        DATED AT HONOLULU, HAWAII, JULY 26, 2024.



Wes Reber Porter
United States Magistrate Judge

**SEMPER v. HAWAII LIFE REAL ESTATE SERVICES, LLC, DBA HAWAII LIFE REAL ESTATE BROKERS, ET AL.; CIVIL NO. 24-00211 HG-WRP;** FINDINGS AND RECOMMENDATION TO (1) GRANT PLAINTIFF'S APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES AND (2) DISMISS THE COMPLAINT WITH LEAVE TO AMEND